J-A24029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: K.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF N.A., NATURAL MOTHER | |
| | No. 830 WDA 2017 |

Appeal from the Order Entered May 10, 2017
In the Court of Common Pleas of Washington County
Orphans' Court at No(s): 63-16-737

| | |
|---|---|
| IN RE: A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF N.A., NATURAL MOTHER | |
| | No. 831 WDA 2017 |

Appeal from the Order Entered May 10, 2017
In the Court of Common Pleas of Washington County
Orphans' Court at No(s): 63-16-738

| | |
|---|---|
| IN RE: D.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF N.A., NATURAL MOTHER | |
| | No. 832 WDA 2017 |

Appeal from the Order Entered May 10, 2017
In the Court of Common Pleas of Washington County
Orphans' Court at No(s): 63-16-739

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:        **FILED OCTOBER 6, 2017**

Appellant N.A. ("Mother") appeals from the order involuntarily terminating her parental rights to her biological children, D.B. (born December 2005), A.B. (born April 2012), and K.B. (born April 2012). Upon careful review, we affirm.

The Washington County Children and Youth Social Services Agency ("Agency") first became involved with the children in July of 2014, when A.B. and K.B. were found walking down the street alone and away from the family's residence.[1] After the parents failed to adhere to a safety plan and tested positive for drug use, the children were placed in emergency foster care. On August 26, 2014, the children were adjudicated dependent, and they have remained out of their parents' care since that time.[2] Mother and Father were ordered to participate in drug and alcohol treatment programs and to undergo mental health evaluations, submit to random drug and alcohol testing, and participate in services through Justice Works.[3]

---

[1] The three children lived with Mother and their biological father ("Father").

[2] The children have spent time in the care of relatives, kinship care, and foster care.

[3] Justice Works provides parenting education. ***See*** N.T., 9/6/16, at 53.

Throughout 2014, 2015, and 2016, Mother[4] was found at dependency hearings to fluctuate between (1) being not compliant and making no progress with the permanency plan, and (2) being substantially compliant and making moderate progress. Mother was incarcerated twice in early 2015 for failing to report to her probation officer,[5] arrested in November 2015 for refusing a drug test, and arrested in December 2015 for failing a drug test. In January 2016, Mother resided in the foster home with the children, but in February 2016, she left in order to focus on her recovery. In March, Mother resided with D.B. during the week and with the younger children on the weekends. She continued to visit the children until May 9, 2016, when she tested positive for drugs and was again incarcerated.

On June 20, 2016, the Agency filed petitions to terminate the parental rights of Mother and Father under 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). The juvenile court held hearings on the petitions on September 6, 2016, November 16, 2016, and December 30, 2016. Two Agency caseworkers (Christina Popovich and Andrew Albright) testified, as well as an employee of Justice Works, a clinical psychologist (Dr. Neil Rosenblum) who had evaluated interactions between the children and their biological parents and

---

[4] As Father has not appealed the termination of his parental rights, we do not address his actions after the children were removed from his care.

[5] In December 2014, Mother pleaded guilty to conspiracy to commit burglary and receiving stolen property and was sentenced to three years' probation. *See* N.T., 9/6/16, at 170-71.

between the children and their foster parents, Mother, Mother's father, and Mother's father's girlfriend.

On May 10, 2017, the court issued an order terminating the parental rights of both Mother and Father. The court found that the Agency proved by clear and convincing evidence that termination was warranted under each of the subsections of 23 Pa.C.S. § 2511(a) alleged in the petition.

Mother filed a timely appeal, and raises the following issues:

1. Did the trial court err in terminating Mother's parental rights where the Agency failed to prove by clear and convincing evidence that Mother evidenced a settled purpose of relinquishing parental claims to the children and failed to prove that Mother refused or failed to perform parental duties?

2. Did the trial court err in terminating Mother's parental rights where the Agency failed to prove by clear and convincing evidence that the children were without essential parental care, control or subsistence necessary for their physical or mental well being due to Mother's repeated and continued incapacity, abuse, neglect or refusal?

3. Did the trial court err in concluding that the conditions which led to the removal of the children continued to exist and termination of the parental rights would best serve the needs and welfare of the children?

Mother's Brief at 2.[6]

_____

[6] We note that Mother's three issues challenge the trial court's findings under, respectively, subsections (a)(1), (a)(2), and (a)(5) and (a)(8) of Section 2511. Mother has not challenged whether CYS met its burden under subsection 2511(b), except to the extent that the 2511(b) requirements dovetail requirements of Section 2511(a)(8).

We consider Mother's issues mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (brackets, citations, and quotation marks omitted).

> Section 2511 of the Adoption Act requires a bifurcated analysis:
>
> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted statutory grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). As Mother does not make a separate argument under Section 2511(b), we shall

limit our discussion here to Section 2511(a). We will affirm if we agree with the trial court's decision as to any one subsection of Section 2511(a). ***In re B.L.W.,*** 843 A.2d 380, 384 (Pa. Super.) (*en banc*), ***appeal denied***, 863 A.2d 1141 (Pa. 2004).

We shall review only the court's findings under Section 2511(a)(8), which provides:

> **(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8); ***see In re Z.P.***, 994 A.2d 1108, 1118 (Pa. Super. 2010) (describing the three elements that must be met under subsection (a)(8): (1) removal from parental care for 12 months, (2) continued existence of the conditions leading to removal, and (3) that the needs and welfare of the children are best served through termination).[7] "Termination under Section 2511(a)(8) does not require the court to evaluate a parent's

---

[7] Because both subparts (a)(8) and (b) of Section 2511 require the court to consider the "needs and welfare" of the child, when the petition is premised on (a)(8), the child's best interests normally must be considered twice by the court. ***See In re Matsock***, 611 A.2d 737, 748 (Pa. Super. 1992) (applying this reasoning to (a)(5)).

current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services." **In re Z.P.**, 994 A.2d at 1118.

In assessing what best serves the needs and welfare of the child, the court contemplates the "nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." **L.M.**, 923 A.2d at 511 (citations omitted). Nevertheless, the existence of some bond between a child and a biological parent does not necessarily preclude termination of parental rights. **In re K.Z.S.**, 946 A.2d, 753, 764 (Pa. Super. 2008). In addition to the existence of a parental bond, the court "can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." **In re C.D.R.**, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citation mitted); **see also In re T.S.M.**, 71 A.3d at 268-69 ("courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents," because "termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home").

Mother argues that the second requirement under Section 2511(a)(8), that the conditions leading to the removal of the children continue to exist,

is not met because the permanency orders show that Mother has had moderate compliance with the permanency plan as of August 2015, and has substantial compliance as of January 2016. Mother's Brief at 15-16. Mother contends that she has been compliant in participating in parenting education and drug, alcohol, and mental health services. *Id.*[8]

Mother also argues that termination would not serve the best needs and welfare of the children. Mother's Brief at 16-18. Mother points out that the caseworker, Dr. Rosenblum, and the foster parent all testified that the children and Mother have a bond. *Id.* Dr. Rosenblum testified that Mother is intellectually able to care for the children, and that she is patient and nurturing in her interactions with them. *Id.* at 17-18.

Regarding subsection (a)(8), the trial court found:

The children have been in the care of two different foster families since August 26, 2014, thus meeting the first requirement under 23 Pa.C.S. § 2511(a)(8). Although Mother was consistent with her visits with the children, at no time were the children court-ordered to be returned to Mother's care. Furthermore, Mother was given the opportunity to participate in overnight visits in March 2016, however, according to Ms. Popovich, these visits ceased when [Mother] stopped staying in the foster home.

Although the [c]ourt recognizes Mother's efforts to attempt to establish a sober lifestyle, she has not remedied the conditions which led to the removal of the children. The fact remains that Mother has not maintained a sober lifestyle and tested positive for drugs as recently as May 2016, one month prior to the

---

[8] Mother does not specify which of these programs she began after the petition was filed.

Agency's filing of the *Petition*. Mother was given ample opportunity to successfully complete treatment and alter her lifestyle so that she could achieve reunification with her children. Ms. Popovich credibly testified that she and the service providers have done everything they can in order to prevent the termination of Mother's parental rights. Although Ms. Popovich admits that Mother has made some effort to comply with the court-ordered services, she also testified that Mother's level of success has been inconsistent over the twenty-two month period prior to the Agency filing the Petition. Additionally, there is not any evidence that Mother can make the changes necessary to address both her drug and alcohol problems and her mental health issues, even with the services being provided to her.

Dr. Rosenblum credibly testified that although Mother acts appropriately with the children and has been intermediately effective with them, he continues to have concerns with her ability to achieve sobriety and properly care for the children. Specifically, Dr. Rosenblum opined that Mother's relationship with Father is co-dependent and this relationship prevents both parents from overcoming their addictions. Despite the fact that a bond exists between Mother and each of the children, Dr. Rosenblum opined that it is not appropriate to wait any longer for Mother to demonstrate that she can properly care for these children, since she has had two and a half years to achieve this goal. In fact, it is Dr. Rosenblum's professional opinion that it is in the best interests of the children to sever the bond with Mother, and severing this bond will allow the children to be adopted and thus continue to progress and move forward.

The Agency has provided clear and convincing evidence of each element under 23 Pa.C.S. § 2511(a)(8)[.]

Trial Ct. Op. and Order, 5/10/17, at 23-24 (citations to the record and emphasis omitted).

The record supports the trial court's conclusion that the elements of subsection (a)(8) have been met. ***In re T.S.M.***, 71 A.3d at 267. While Mother continues to work towards recovery from drug addiction, the trial court did not abuse its discretion in finding that clear and convincing

evidence establishes that after two years she still has dependency issues which prevent her from adequate parenting. *Cf. In re Z.P.*, 994 A.2d at 1118.[9] Despite their ongoing bonds with Mother, the children have a need for permanency; the court therefore did not abuse its discretion in determining that the needs and welfare of the children are best served by terminating Mother's rights and permanently placing the children with their foster family. *See In re C.D.R.*, 111 A.3d at 1219. Thus, because the record supports the trial court's findings, we affirm the order below. *See In re T.S.M.*, 71 A.3d at 268-69.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/6/2017

_____

[9] *See also* N.T., 9/6/16, at 144-45, 185 (Mother describing the extent of her ongoing recovery efforts).

- 10 -